IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL SHANE WILMOTH                                            PLAINTIFF

v.                               Civil No. 6:15-CV-06057

SHEILA SHARP, *et. al.*                                                           DEFENDANTS

**ORDER**

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendant Sheila Sharp, Jerry Bradshaw, Robert Wiley, Aaron Hewitt, and David Brooks's Motion to Dismiss.[1] (ECF No. 30), and Plaintiff's Response, (ECF No. 40).

**I. BACKGROUND**

Plaintiff filed his Complaint in the Eastern District of Arkansas on May 12, 2015. (ECF No. 2). It was transferred to this District on June 2, 2015. (ECF No. 7). Plaintiff filed a Motion for Preliminary Injunction on June 8, 2015. (ECF No. 10). This Motion was denied, and Plaintiff was ordered to file an Amended Complaint on November 12, 2015. In the Order, Plaintiff was advised that he must use the Court-approved form for his Amended Complaint, and that the Amended Complaint would supersede his Original Complaint. (ECF No. 11). After repeated issues with mail being returned to the Court, including two instances when Plaintiff failed to keep

---

[1] These five Defendants are the only Defendants who have been served in this case. Attempts to serve the other Defendants were unsuccessful, and Plaintiff has provided no additional information to identify them for service. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) (it is Plaintiff's responsibility to provide the Court with an address for proper service on Defendants).

1

the Court apprised of his current address, Plaintiff filed his First Amended Complaint on December 8, 2016. (ECF No. 21).

Plaintiff did not utilize the Court-approved Complaint form sent to him for his First Amended Complaint, and did not indicate if he was proceeding against the Defendants in their official or personal capacities. In his Amended Complaint, Plaintiff alleged that, in the summer of 2015, he was housed in the Arkansas Community Correction (ACC) T.V.P. program[2] when an unnamed Major accused him of being a homosexual and then "denied him the right to call the P.R.E.A.[3] hotline." (ECF. No. 21 at 3). Plaintiff further alleged that an unnamed Sergeant assaulted him when he was wearing handcuffs, and he was denied medical treatment for the assault by unnamed staff. Plaintiff alleges he was then sent to the Arkansas Department of Correction (ADC), where he was again denied his right to call the P.R.E.A. hotline and denied medical care. Plaintiff alleges he requested mental health treatment at the ADC and was denied mental health treatment by unnamed ADC "mental health doctors." (*Id.*) Plaintiff stated he did not know the names of the Defendants and "reserves the right to add more Defendants and names after discovery is complete." (*Id.* at 4).

On December 9, 2016, the Court entered an Order directing Plaintiff to complete an Addendum to provide names for Defendants previously identified only by job title and, in some cases, the year 2015. (ECF No. 22). Plaintiff filed the Addendum to his Amended Complaint on December 16, 2016. (ECF No. 23). In the Addendum, Plaintiff provided the following names:

| Title Provided on Amended Complaint | Name(s) Provided on Complaint Addendum |
|---|---|
| ACC Director of 2015 | Sheila Sharp |

---

[2] Plaintiff identifies this, in later documents as Omega TVP, which appears to be the Arkansas Technical Violator Center.
[3] Prison Rape Elimination Act. *See* Arkansas Community Correction AD-17-33, available at http://www.dcc.arkansas.gov/agency-policy.

| ACC Assistant Director of 2015 | Jerry Bradshaw |
| --- | --- |
| ACC Warden of TVP in 2015 | K. Brown |
| ACC Assistant Warden of TVP in 2015 | Havard |
| ACC Major of TVP in 2015 | Wiley |
| ACC Sergeant of TVP | Garner, Hewitt, Brooks, "I do not know the name of all officers" |
| ACC Mental Health Doctor of 2015 | Kitrell |
| ADC Mental Health Doctors | Do not know name |

The Court entered an Order directing the Clerk to amend the Defendant names, to the extent possible, on December 19, 2016. (ECF No. 24). In his Addendum, Plaintiff was given the opportunity to provide additional detail or clarification to his claims. Plaintiff provided only one date, and linked only one claim to one named Defendant. Specifically, Plaintiff alleged that he was "ass[a]ulted twice by ACC person[n]el on two different incidents once on 4-19-2015 and once by Sgt. Garner." Plaintiff again did not indicate if he was proceeding against the Defendants in their official or personal capacities.

On February 15, 2017, the Court entered an Order directing service on Defendants. (ECF No. 25). On February 27, 2017, the summons were returned unexecuted on Defendants Garner, Havard, and Kitrell. (ECF No. 27).

On March 7, 2017, the served Defendants filed a Motion to Dismiss. (ECF No. 30). On November 14, 2017, the Court entered an Order directing Plaintiff to respond to the Motion. (ECF No. 35). On January 26, 2018, after two extensions, Plaintiff submitted a cover sheet labelled "Response" and a proposed Second Amended Complaint, utilizing portions of a form from the

3

Eastern District of Arkansas. (ECF No. 40, 40-1). The Response states that Plaintiff "still does not have all the names of the Defendants." (ECF No. 40). Plaintiff's proposed Second Amended Complaint appears to add a number of new Defendants, either by name or title, as well as several new dates and new alleged incidents, several of which occurred after the initial filing of this case. Plaintiff also checked the box indicating he would like to proceed against Defendants in both their official and personal capacity. (ECF No. 40-1).

There is some question as to whether a Plaintiff may respond to a Motion to Dismiss with an Amended Complaint – particularly when he has already been permitted the opportunity to amend and given an Addendum to aid in clarifying his previous amendment. *See Fischer v. Minneapolis Pub. Schools*, 792 F.3d 985, n. 4 (8th Cir. 2015); *Morgan Distribg. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); *but see Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (holding that it was procedural error to ignore the motion to amend because Pure Country's motion to amend rendered moot Sigma Chi's motion to dismiss the original complaint)). Keeping in mind the liberal construction to be afforded *pro se* Plaintiffs, and following the directive of the Eighth Circuit in *Pure Country,* the Court will permit Plaintiff to file his Second Amended Complaint and deny Defendants' Motion to Dismiss (ECF No. 30) as MOOT. The Clerk is DIRECTED to rename Plaintiff's Response Supplement (ECF 40-1) as his Second Amended Complaint and file it on the docket as such.

Accordingly, the Court will screen Plaintiff's Second Amended Complaint as required under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. ANALYSIS

**A. April 2015 – Accusation of Homosexuality and PREA Hotline**

Plaintiff was transferred from the Benton County Detention Center to the Arkansas Community Correction (ACC) Technical Violator Center on March 9, 2015. (ECF No. 40-1 at 11). At some point in April 2015, Plaintiff alleges Major Wiley accused him of being a homosexual and of engaging in homosexual acts with another inmate, then denied him his right to call the PREA hotline. (*Id.*). Plaintiff alleges he then told Warden K Brown, and Asst. Warden Havard about the incident with Wiley, but nothing was done, and he was still denied his right to call PREA hotline. (*Id.* at 11-12).

Plaintiff's allegations regarding a PREA Hotline fail to state a claim upon which relief may be granted. Section 1983 does not create any substantive rights. Rather, it provides a remedy for violations of constitutional rights or rights created under federal law. *Tarsney v. O' Keefe*, 225 F.3d 929, 939 (8th Cir. 2000). While there appear to be no Eighth Circuit decisions on point, it is clear the PREA does not create such a cause of action pursuant to § 1983. "[O]ther courts addressing this issue have found that the PREA does not establish a private cause of action . . . ." *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir.) (per curiam), *cert. denied*, 136 S. Ct. 238 (2015). *See also Diamond v. Allen*, No. 7:14– CV– 124, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) (citing cases); *Amaker v. Fischer*, No. 10– CV– 0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (noting that " every court to address the issue has determined that PREA cannot support such a cause of action by an inmate"); *Simmons v. Solozano*, No. 3:14CV– P354– H, 2014 WL 4627278, at *4 (W.D. Ky. Sept.16, 2014) (holding that the PREA creates no private right of action). Here, Plaintiff has cited no case in support of his position; therefore, any claim raised under the PREA is properly dismissed as frivolous.

To the extent Plaintiff alleges that Defendant Wiley verbally harassed him, this allegation also fails to state a claim. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993).

To the extent Plaintiff's allegations could be construed as a failure of a grievance system, Plaintiff's allegation that Defendant Brown and Havard failed to do anything does not state a claim. "[P]risoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts." *Hudson v. Palmer*, 468 U.S. 517, 523

(1984)(*citing Johnson v. Avery*, 393 U.S. 483 (1969)). However, it is well-settled that inmates have no substantive constitutional right in detention center officials following grievance procedures. *See e.g., Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (no constitutional violation in failing to process all of the grievances submitted by a prisoner); *see also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest in having prison officials follow state law or prison regulations). Plaintiff's constitutional right of access to the courts was not impinged by Defendants Brown and Havard, as is demonstrated by Plaintiff's filing of this action.

    **B. April 19, 2015 Incident**

Plaintiff alleges that on April 19, 2015, he told unnamed ACC Security Personnel that he was thinking about hurting another inmate in his barracks and asked for help with mental health issues. Plaintiff alleges that approximately five minutes later, he was called into Hewitt's office where he was "poked and prodded and talked crazy to" by the personnel. They placed him in handcuffs and then Sgt. Hewitt and Officer Brooks and "other treatment and security personnel" assaulted him. He alleges he was injured in the assault. He further alleges he was denied medical care after the assault by the unnamed ACC Nurse he saw that day. (ECF No. 40-1 at 12-13). Plaintiff does not describe his injuries or what happened during the assault.

To the extent Plaintiff alleges verbal harassment when he was "talked crazy to," this allegation fails to state as claim, as discussed above. Plaintiff's allegation that he was "poked and prodded" likewise fails to state a claim of constitutional dimension.

Plaintiff's allegations of being assaulted while in handcuffs, and then denied medical care after the assault, while factually quite sparse, appear to state a claim sufficient to survive screening.

7

### C. Denial of Mental Health Care from March 2015 through January 2018

Plaintiff alleges that the following Defendants denied him mental health treatment between March 2015 through January 2018, and they additionally denied him all mental health medications that had been prescribed by his free-world doctors:

> Dr. Kitrell, Dr. Sells, female mental health doctor of ACC don't know name, Shelley Byers, Rory Griffin, Dream Redic-Young, Bob Parker, all mental health workers at the Ouachita River Correction Unit, and East Arkansas Regional Unit, and the mental health doctors at intake I do not know these names

(*Id.* at 13-14).

Plaintiff filed his initial Complaint in this lawsuit on May 12, 2015, for issues that arose when he was incarcerated in the ACC Technical Violator Center. (ECF No. 2). He notes in his Second Amended Complaint that he was transferred to the ADC Ouachita River Unit on June 23, 2015. (ECF No. 40-1).

Plaintiff may not add new claims, naming new Defendants, and alleging issues that arose in new facilities to this case. *See Brown v. Wallace*, 957 F.2d 564, 565 (8th Cir. 1992) (no abuse of discretion when magistrate judge denied amendment of § 1983 inmate claims because it would be "inefficient and possibly confusing to add defendants and claims which had nothing to do with the original complaint."); Fed. R. Civ. P. 15(c)(1)(B) (an amendment to a pleading relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading.") To the extent Plaintiff's claims extend to June 23, 2015, and relate to his mental health care at the ACC Technical Violator Center, they will be addressed. Dr. Kitrell and the unnamed "female mental health Doctor" are the only two Defendants which Plaintiff has identified as ACC employees for this claim.

Plaintiff's allegations that Dr. Kittrell and the unnamed "female mental health Doctor" in the ACC Technical Violator Center denied him the mental health medications prescribed by his free-world physician fails to state a claim. Failure to follow the directions of a free world physician is not a constitutional violation under § 1983. *Dulany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997) (a prison doctor is not required to follow the recommendations of outside consultants, but instead "remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment").

Plaintiff's bare allegation that Dr. Kittrell and the unnamed "female mental health Doctor" in the ACC Technical Violator Center denied him the mental health care also fails to state a claim. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well-settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted). Unless, however, the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence

to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Here, Plaintiff's allegation fails to meet both components of the deliberate indifference standard. Plaintiff alleges only that he was denied mental health treatment and that "he has medical records to prove his mental illness." (ECF No. 40-1 at 13-14). Plaintiff did not identify his mental illness diagnosis or symptoms, and did not attach any medical records to substantiate his allegation. His allegations, therefore, do not permit an inference that he had an objectively serious medical need which was either diagnosed by a physician as requiring treatment, or was so obvious that even a layperson would easily recognize the necessity for a doctor's attention.

Plaintiff's allegations also fail to meet the subjective component of the standard. Plaintiff does not allege that saw or talked to either Dr. Kitrell or the unnamed ACC Nurse concerning his mental health. Instead, he alleges only that he asked security personnel for help with his mental health needs. (*Id.* at 12). Thus, Plaintiff's allegations do not support an inference that Dr. Kittrell or the ACC Nurse were even aware of his mental health needs, let alone deliberately indifferent to them.

Finally, Plaintiff's allegation that security personnel failed to help him with his mental health needs fails to state a claim. Plaintiff does not allege that security personnel ignored an acute or escalating situation with his mental health condition, or that his overall mental health prognosis was made worse by any possible delay in treatment.

**D. June 15, 2015 Incident**

Plaintiff alleges that on June 15, 2015, he came back from the law library in cuffs and shackles and found his cell had been "shaken down" and much of his legal work was missing, so

11

he refused to go into his cell until they called a Lieutenant or Captain to his cell. (*Id.* at 13). Plaintiff alleges "many security personnel" came at that point, and Sergeant Garner came up to him while he was in the cuffs and shackles, punched him in the face, and then took him to the ground, where he continued to assault him. Plaintiff alleges no one tried to stop Garner. As they were moving him to his cell, Garner kept punching him in the face and then slammed him face first into the floor. Another Sergeant then got Garner to stop assaulting him and leave the cell. (*Id.*).

Plaintiff mentioned Garner by name in the Addendum to his First Amended Complaint, but did not provide a date for the alleged assault in the Addendum. Plaintiff did provide the date of the assault in his Second Amended Complaint, placing the date of the assault as June 15, 2015, which was more than a month past the filing of the original Complaint. This second alleged assault, however, occurred in the same facility as the April 19, 2015, incident, is similar in nature, and took place in a relatively short time period after the first alleged incident. Keeping in mind the liberal construction to be afforded *pro se* Plaintiffs, this claim may remain for further consideration.

Plaintiff's claim that he told Ms. Haller, Mr. White. Warden K. Brown, Asst. Warden Havard, Sheila Sharp and Jerry Bradshaw about the alleged assault, and they did nothing about it, does not state a claim of constitutional dimension. As discussed earlier in this opinion, there is no constitutional right to a grievance procedure. Plaintiff's constitutional right of access to the courts was not impinged by these Defendants for this incident, as is demonstrated by Plaintiff's filing of this action.

### E. June 23, 2015 Incident

Plaintiff alleges that on June 23, 2015, he was transferred to the ADC Ouachita River Unit, where he told intake personnel that he had been assaulted by Defendant Garner and showed them

his injuries. He alleges he filled out a statement and Defendant Pruitt had him fill out a statement and a grievance, but nothing was done. Plaintiff alleges that the "ADC Warden, Asst. Warden, all medical staff, mental health staff, and security personnel of the ADC at Ouachita River Correction Unit on June 24, 2015 tried to cover up this assault." (ECF No. 40-1 at 14).

As discussed earlier in this opinion, there is no constitutional right to a grievance procedure. Plaintiff's constitutional right of access to the courts was not impinged by the ADC Defendants for this incident, as is demonstrated by Plaintiff's filing of this action.

### F. Allegations for June and October of 2017

Plaintiff alleges that on October 20, 2017, he had a medical seizure in front of Captain Fields who then sprayed him with M-K 1.3% and handcuffed him. He was then assaulted while in handcuffs by Captain Fields, Sergeant Scott, Officer Armstrong, and ADC security staff. Plaintiff alleges he was then denied medical care by Nurse DeWitt and all medical staff working on October 20, 2017. (ECF No. 40-1 at 16). Plaintiff further alleges that in June of 2017, he broke his foot and was denied medical care for several weeks. (*Id.*).

These claims occurred more than two years past the filing of the original Complaint and do not relate back to the claims therein.

### G. Denial of SATP Program

Plaintiff alleges Dr. Sells and Cedric Albritton denied him a transfer into the SATP program because he wrote grievances against them and mental health staff. Plaintiff alleges this is keeping him from being released from prison.

Plaintiff does not provide a date for this allegation, but identifies Dr. Sells and Albritton as employees of the Arkansas Department of Correction. (ECF No. 40-1 at 5, 6). Therefore it appears that this claim does not relate back to Plaintiff's original Complaint. Additionally, inmates have no constitutional right to a particular classification. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).

It is also well-settled that inmates do not have a constitutionally protected liberty interest in the possibility of parole or probation as required for a due process claim. *Hamilton v. Brownlee*, 237 Fed. App'x. 114, 115 (8th Cir. 2007). Plaintiff's denial of transfer into a particular program therefore fails to state a claim.

### H. Official Capacity Claims

In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed official capacity suits. As explained by the Court in *Gorman*:

> "Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S.Ct. at 362."

*Gorman,* 152 F.3d at 914.

In his Amended Complaint, Addendum, and Second Amended Complaint, Plaintiff has identified no policy or custom or the ADC or ACC which violated his constitutional rights. Further, to the extent any Defendants have been identified sufficiently to be served, they are employees of the State of Arkansas. "[N]either a State nor its officials acting in their official capacities are "persons" under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir. 1999) ("a section 1983 suit cannot be brought against the State").

### IV. CONCLUSION

For these reasons, the following claims remain for further consideration:

1. Plaintiff's individual capacity claim that he was assaulted and injured by Sergeant Hewitt, Officer Brooks, and unnamed "treatment and security personnel" while handcuffed on April 19, 2015.

2. Plaintiff's individual capacity claim against an unnamed ACC Nurse for denial of medical care on April 19, 2015, after the alleged assault.

3. Plaintiff's individual capacity claim that he was assaulted by Sergeant Garner while he was in handcuffs and shackles on June 15, 2015, and security personnel on the scene failed to stop Garner.

Defendants are DIRECTED to identify the "treatment and security personnel" and the ACC Nurse who interacted with Plaintiff on April 19, 2015. Defendants are further DIRECTED to identify the security personnel and Sergeant Garner[4] who interacted with Plaintiff for the June 15, 2015, incident.

As to Plaintiff's other claims and listed Defendants, IT IS ORDERED that they are DISMISSED WITHOUT PREJUDICE.

Defendants' Motion to Dismiss (ECF No. 30) is DENIED as MOOT. The Clerk is DIRECTED to rename Plaintiff's Response Supplement (ECF 40-1) as his Second Amended Complaint and file it separately on the docket as such.

IT IS SO ORDERED this 27th day of February 2018.

/s/ P. K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

---

[4] Service was previously attempted on Defendant Sergeant Garner, but service was returned unexecuted, indicating he could not be identified. (ECF No. 27 at 4).